UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE LUIS ISAZA (A-079-188-150),<br>Petitioner,<br>v.<br>WARDEN OF THE CENTRAL VALLEY ANNEX DETENTION, et al,<br>Respondents. | No. 1:26-cv-7002 TLN CSK<br><br>FINDINGS & RECOMMENDATIONS |

Petitioner Jose Luis Isaza (A-079-188-150), a native and citizen of Columbia, filed through counsel a verified petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] Petitioner was extradited to the United States in 2003, and convicted of a drug offense in 2004. Following completion of his prison sentence, petitioner was detained by Immigration and Customs Enforcement ("ICE"), and ordered removed. Following additional immigration proceedings, he was later released on supervision, but re-detained on or about March 4, 2026. This habeas petition concerns petitioner's re-detention. For the reasons that follow, the Court recommends that the petition for writ of habeas corpus be granted and petitioner be immediately released, subject to the supervision conditions previously imposed.

[1] This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636, Fed. R. Civ. P. 72, and Local Rule 302(c)(17).

## I. FACTUAL BACKGROUND

Petitioner is a 60-year-old native and citizen of Columbia who was extradited to the United States on or about August 29, 2003. (ECF No. 1-2 at 4.) On April 2, 2004, petitioner was convicted in the U.S. District Court for the Southern District of Florida for the offenses of conspiracy to import cocaine and conspiracy to possess with intent to distribute cocaine on board a vessel which is subject to the jurisdiction of the United States. (Id.; ECF No. 7-3.) Initially, petitioner was sentenced to a 135-month federal prison term and a 5-year term of supervised release. (ECF No. 1-2 at 4.) On May 18, 2007, the district judge granted the government's motion to reduce petitioner's sentence based on petitioner's cooperation and reduced petitioner's sentence to 90 months. (Id.) Petitioner's conviction prompted removal proceedings and a Notice to Appear was issued. (Id.) Following completion of the federal prison term, petitioner was transferred to ICE custody and detained in Miami, Florida. (Id.) On or about January 6, 2009, an immigration judge ordered petitioner removed to Columbia. (Id.)

On or about January 16, 2009, petitioner was released from ICE custody under a grant of deferred action. (Id.) ICE later terminated this deferred action status on a date unknown to petitioner. (Id.) On or about March 18, 2013, petitioner filed a motion to reopen his removal proceedings, which an immigration judge granted. (Id.)

In or around 2016, petitioner filed an application for asylum and for withholding of removal, which included a request for protection under the Convention Against torture ("CAT"). (Id. at 5.)

On January 25, 2017, an immigration judge sitting in Miami, Florida, ordered petitioner removed to Columbia. (Id.; ECF No. 7-2.) At the same time, the immigration judge granted petitioner's request for deferral of removal under CAT, which prohibits petitioner's removal to Columbia. (ECF No. 1-2 at 5 (citing 8 C.F.R. § 1208.17).) Neither party reserved their rights to appeal the January 25, 2017 order, and the removal order became administratively final. (Id. (citing 8 U.S.C. § 1101(a)(47)(B)); ECF No. 7-2.) On February 9, 2017, ICE issued an Order of Supervision ("OSUP"), which allowed petitioner to remain on release while ICE worked on effectuating petitioner's removal, and required petitioner to report to his local Office of

Enforcement and Removal Operations ("ERO") in accordance with the OSUP. (ECF No. 1-2 at 5.) Petitioner reported as required. (Id.) Respondents do not contest this fact.

Petitioner was arrested by ICE on or about March 4, 2026. (Id.) Respondents provided the following immigration documents. The Notice of Revocation of Release informed petitioner his February 9, 2017 OSUP was being revoked for the following reasons;

> It is appropriate to enforce the removal order entered against you as ICE has the ability and means to effectuate your removal.
>
> On 1/25/2017, you were ordered removed to Colombia, but you were granted deferral of removal to Colombia. Your case is under review for removal to an alternate country.

(ECF No. 7-4 at 1.) The Notice was issued by a Supervisory Detention and Deportation Officer and includes a proof of personal service on petitioner on March 4, 2026. (Id. at 3.) The signature line of the form is marked "refused to sign." (Id. at 2.) The Alien Informal Interview Upon Revocation of Order of Supervision Under 8 C.F.R. §§ 241.4(1), 241.13(i) form states petitioner made no oral responses and did not provide a written statement or any documents. (Id. at 1.) The warrant of removal is dated March 4, 2026, but the execution portion of the form is not completed. (ECF No. 7-6 at 1, 3.) DHS issued a Notice of Removal dated March 30, 2026, informing petitioner that ICE intends to remove petitioner to Mexico. (ECF No. 7-7 at 1.) This Notice indicates petitioner was served with a copy of the Notice of Removal on March 30, 2026, at 9:15 a.m. (Id.) On May 22, 2026, a Deportation Officer served petitioner with a warning, form I-229(a), advising him of the consequences of his failure to depart the United States; the form reflects petitioner refused to sign. (ECF No. 7-9 at 1.)

On June 18, 2026, ICE issued a Notice of Failure to Comply Pursuant to 8 C.F.R. § 241.4(g), advising petitioner that he was informed on December 10, 2025, of the specific requirements he needed to comply with to obtain travel documents, and because petitioner failed to do so, he would be detained until he could demonstrate reasonable efforts to comply with the order of removal. (ECF No. 7-8 at 1.) The form includes a proof of service attesting to service on petitioner on June 17, 2026, at 12:00 p.m., and notes petitioner refused to sign. (Id. at 2.)

///

Prior to his 2026 re-detention, petitioner resided in Miami-Dade County, Florida. (Id. at 4.) After his re-detention, petitioner filed a petition for writ of habeas corpus in the U.S. District Court for the Middle District of Florida, but on May 21, 2026, the district court found petitioner's due process claim was not yet ripe because his detention at that time had not exceeded the six-month mark and denied the petition without prejudice. (ECF No. 1-2 at 5-6.) Petitioner lives with his wife and their adult son, both citizens of the United States, and petitioner has two other adult daughters, also citizens of the United States. (ECF No. 9 at 7.) Petitioner has a real estate license he obtained after he completed his prison sentence and which was approved only after fully disclosing his criminal and immigration history. (Id.) Before his re-detention, petitioner was employed with I.B. Trading, LLC, a real estate company in Miami, Florida, that he co-owns with his wife, and if released, petitioner will return to work there. (Id.)

Petitioner has been in continuous detention since March 4, 2026, for over 7.5 months. (Id. at 6.)

## II. PROCEDURAL BACKGROUND

On September 1, 2026, through counsel, petitioner filed his verified petition for writ of habeas corpus. (ECF No. 1.) On September 9, 2026, respondents timely filed a reply to the petition. (ECF No. 7.) On September 16, 2026, petitioner filed a timely reply brief. (ECF No. 9.) Briefing is now complete.

## III. LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." Hamdi v. Rumsfeld, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." Preiser v. Rodriguez, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." I.N.S. v. St. Cyr, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges

to immigration detention. See Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

## IV. DISCUSSION

Petitioner challenges his continued detention based on the violation of the following: (1) the substantive and procedural due process clauses of the Fifth Amendment; and (2) the Fourth Amendment because there are no reasonable, objective grounds for the detention. Respondents argue that petitioner is subject to a final order of removal, and his criminal history warrants he remain detained pursuant to 8 U.S.C. § 1231(a)(6). (ECF No. 7 at 3.) Respondents contend ICE is "diligently working to effectuate his removal." (Id.) Further, respondents argue that petitioner has not carried his burden to show there is no significant likelihood of removal in the reasonably foreseeable future, and ICE revoked petitioner's previous release pursuant to a written notice of revocation of release. (ECF No. 7 at 3.)

Pursuant to 8 U.S.C. § 1231(a)(1), the Attorney General of the United States shall remove a noncitizen within 90 days, which is referred to as the "removal period." 8 U.S.C. § 1231(a)(1)(A). The removal period begins on the latest of the following: (i) the date the removal order becomes administratively final; (ii) if the removal order is judicially reviewed and a stay of removal is ordered, the date of the court's final order; or (iii) the date the noncitizen is released from detention or confinement. 8 U.S.C. § 1231(a)(1)(B). During the removal period, the noncitizen shall be detained. 8 U.S.C. § 1231(a)(2). If the noncitizen is not removed within the removal period, the noncitizen shall be released and subject to supervision with certain conditions. 8 U.S.C. § 1231(a)(3). Here, it is clear that the 90-day removal period has long passed where petitioner was ordered removed on January 25, 2017, and both parties waived appeal. Respondents do not dispute that petitioner was most recently released under an Order of Supervision on February 9, 2017. (ECF No. 1-2 at 5.)

Citing Zadvydas, respondents appear to argue that petitioner's detention under § 1231(a)(6) is presumptively reasonable because petitioner is detained based on his criminal history and because he has not shown there is no significant likelihood of removal in the reasonably foreseeable future. (ECF No. 7 at 3.) Zadvydas dealt with a noncitizen who had been detained and never released following a final order of removal. Zadvydas, 533 U.S. at 701. In

that context, the Supreme Court held that once a noncitizen has been detained for six months and "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with sufficient evidence to rebut that showing." Id.

However, the burden-shifting framework from Zadvydas does not apply to petitioner's challenge to his re-detention. As another district court noted in a similar context, "[t]his case is not about ICE's authority to detain in the first place upon an issuance of a final order of removal as in Zadvydas." Nguyen v. Hyde, 788 F. Supp. 3d 144, 149 (D. Mass. 2025); see also Yan-Ling X. v. Lyons, 2025 WL 3123793, at *3 (E.D. Cal. Nov. 7, 2025). As in Nguyen, "[t]his case is about ICE's authority to re-detain [petitioner] after he was issued a final order of removal, detained, and subsequently released on an [order of supervision]." Nguyen, 788 F. Supp. 3d at 149. "[T]his is not your typical first round detainment of an alien awaiting removal. Petitioner was previously detained, then released on supervised release for several years, and his 90-day removal period expired." Escalante v. Noem, 2025 WL 2206113, at *3 (E.D. Tex. Aug. 2, 2025). Here, it is clear that petitioner has been detained beyond the expiration of the 90-day removal period.

A set of regulations, 8 C.F.R. §§ 241.13(i) and 241.4(l), govern how and when ICE may revoke the release of a noncitizen who has been ordered removed. A noncitizen who has been released under an Order of Supervision "who violates any of the conditions of release may be returned to custody . . . and may be continued in detention for an additional six months in order to affect the alien's removal, if possible[.]" 8 C.F.R. § 241.13(i)(1). A noncitizen's release may also be revoked "if, on account of changed circumstances," it is determined that "there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). The parties do not address these regulations.

**A. Changed Circumstances**

The regulations at 8 C.F.R. § 241.13(i) apply to non-citizens in petitioner's situation. Those regulations indicate that when ICE revokes release to effectuate removal, "it is [ICE's] burden to show a significant likelihood that the alien may be removed." Escalante, 2025 WL

2206113, at *3; see also Roble v. Bondi, 2025 WL 2443453, at *4 (D. Minn. Aug. 25, 2025) ("[T]he regulations at issue in this case place the burden on ICE to first establish changed circumstances that make removal significantly likely in the reasonably foreseeable future[.]"); Abuelhawa v. Noem, 2025 WL 2937692, at *8 (S.D. Tex. Oct. 16, 2025) ("[U]pon revocation of release, the Government bears the burden to show a significant likelihood that the alien may be removed in the reasonably foreseeable future."). As the district court in Escalante found, "[i]mposing the burden of proof on the alien each time he is re-detained would lead to an unjust result and serious due process implications." Escalante, 2025 WL 2206113, at *3. As discussed above, respondents do not address this regulation.

Respondents have not met their initial burden of proof to show that petitioner's removal is in fact significantly likely in the reasonably foreseeable future. Respondents argue that ICE is "diligently working" to effect petitioner's removal, but do not identify what specific steps ICE has taken since March 30, 2026. (ECF No. 7 at 3.) Rather, respondents simply refer to "see attached removal materials." (Id.) The one relevant exhibit the Court could identify is the March 30, 2026 Notice of Removal, which informed petitioner that ICE intends to remove him to Mexico. (ECF No. 7-7.) But this form does not set forth what steps ICE has taken to effect such removal, how likely it is that such removal would occur in the reasonably foreseeable future, or whether a travel document has been requested or obtained. See Yan-Ling, 2025 WL 3123793, at *4 (citing Hoac v. Becerra, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) ("Respondents have not provided any details about why a travel document could not be obtained in the past, nor have they attempted to show why obtaining a travel document is more likely this time around."). In addition, the phrase "significant likelihood" requires something more than a mere possibility that removal will occur. Evidence that "there is at least some possibility" that the designated country of removal "will accept Petitioner at some point … is not the same as a significant likelihood that he will be accepted in the reasonably foreseeable future." Nguyen v. Scott, 796 F. Supp. 3d 703, 725 (W.D. Wash. 2025). Despite ICE's notice that on March 30, 2026, Mexico was identified as the third country for removal, respondents provided no update on the status of such removal, despite the passage of over 6.5 months. (See Docket.)

### B. Compliance with Implementing Regulations

"ICE, like any agency, 'has the duty to follow its own regulations.'" Rombot v. Souza, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) (quoting Haoud v. Ashcroft, 350 F.3d 201, 205 (1st Cir. 2003); see Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons, 954 F.3d 118, 130 (2d Cir. 2020) ("Under deeply rooted principles of administrative law, not to mention common sense, government agencies are generally required to follow their own regulations.").

When revoking petitioner's release pursuant to § 241.13(i)(2) based on changed circumstances, the petitioner "must be told *what* circumstances had changed or *why* there was now a significant likelihood of removal in order to meaningfully respond to the reasons and submit evidence in opposition, as allowed under § 241.13(i)(3)." Sarail v. Bondi, 803 F. Supp. 3d 775, 787 (D. Minn. Sept. 3, 2025) (emphasis in original). Petitioner argues that ICE has failed to show that "it has secured any means through which it can effectuate the outstanding order of removal entered against [petitioner]." (ECF No. 1-2 at 6.) Respondents provided no evidence to so demonstrate.

The Court finds that respondents violated their own regulation, 8 C.F.R. § 241.13. Section 241.13 provides "special review procedures" governing ICE's authority to revoke a removable alien's release in cases where, as here, ICE has (1) previously determined "that there is no significant likelihood of removal in the reasonably foreseeable future," and then (2) subsequently seeks to revoke release based on changed circumstances resulting in a "determin[ation] that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13. Respondents' failure to demonstrate "changed circumstances" violates 8 C.F.R. § 241.13(i)(3). Courts have held that "where an immigration 'regulation is promulgated to protect a fundamental right derived from the Constitution or a federal statute . . . and [ICE] fails to adhere to it, the challenged [action] is invalid.'" Rombot, 296 F. Supp. 3d at 388 (quoting Waldron v. I.N.S., 17 F.3d 511, 518 (2d Cir. 1993)); see also Truong v. Noem, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 6, 2025) ("Courts have found that when ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered.") (collecting cases).

Thus, this Court finds that petitioner's release was improperly revoked in violation of 8 C.F.R. § 241.13(i)(2), and respondents failed to meet their burden of demonstrating changed circumstances indicating a significant likelihood of removal.

**C. Due Process**

In his first claim, petitioner asserts that his detention without constitutionally adequate process violated the Fifth Amendment. (ECF No. 1 at 1; 1-2 at 12.) This Court analyzes petitioner's due process claim "in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." Garcia v. Andrews, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989)). When the government grants a noncitizen parole or supervised release, it creates a protected liberty interest subject to due process clause protection. See Sanchez v. LaRose, 2025 WL 2770629, at *3 (S.D. Cal. Sept. 26, 2025). These protections include at least notice and an opportunity to be heard regarding the revocation. Id.; Mathews v. Eldridge, 424 U.S. 319, 348 (1976) ("The essence of due process is the requirement that 'a person in jeopardy of a serious loss [be given] notice of the case against him and the opportunity to meet it."). In Saengphet v. Noem, the district court ruled that notices revoking protected liberty interests are constitutionally inadequate when they lack individualized explanations of the changed circumstances giving rise to revocation. See 815 F. Supp. 3d 1142, 1150 (S.D. Cal. Nov. 20, 2025). Constitutionally inadequate notice also often leads to constitutionally inadequate opportunity to be heard, because opportunity to be heard must be meaningful to be constitutionally sufficient. See Sanchez, 2025 WL 2770629, at *3; Ying Fong v. Ashcroft, 317 F. Supp. 2d 398, 403 (S.D.N.Y. 2004) ("The opportunity to be heard must be meaningful, that is, an opportunity granted at a meaningful time and in a meaningful manner.") (internal citation omitted). A detainee's opportunity to be heard is not meaningful if the detainee has not been informed of the circumstances of his revoked release in a manner sufficient to allow his response. See Sarail A. v. Bondi, 803 F. Supp. 3d 775, 787 (D. Minn. Sept. 3, 2025).

While this Court recognizes that the government has an interest in enforcing immigration

laws and in public safety, the government's interest in re-detaining petitioner without adequate notice and an opportunity to challenge the revocation of his release is low. See Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. March 3, 2025). "That the Government may believe it has a valid reason to detain petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process." E.A. T.-B. v. Wamsley, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025). Respondents identify no reason why adequate notice and a predeprivation hearing could not be afforded petitioner. Indeed,

> many courts in this district have found that when a non-citizen subject to a final order of removal is released on OSUP and is re-detained years later, the non-citizen is entitled to a pre-deprivation hearing prior to detention due to an accrued liberty interest. See e.g., J.L.R.P. [v. Wofford, No. 1:25-cv-01464-KES-SKO (HC)], 2025 WL 3190589, at *8-10; Alva v. Kaiser, No. 25-cv-06676-RFL, 2025 WL 2419262, at *3-5 (N.D. Cal. Aug. 21, 2025). In J.L.R.P., this Court found that the petitioner was entitled to a bond hearing prior to re-detention because (1) petitioner had a significant private interest in remaining free from detention after being out of custody for nearly four years and built normal attachments to life (2) the risk of erroneous deprivation is high because 8 C.F.R. §§ 241.13 and 241.4 do not provide for review of ICE's reasons for revocation by a neutral arbitrator and (3) the government's interest in detaining petitioner without a hearing is low because in immigration court, custody hearings are routine with minimal costs. J.L.R.P., 2025 WL 3190589, at *9-10 (citing the factors enumerated in Mathews v. Eldridge, 424 U.S. 319, 335, 96 S. Ct. 893, 47 L.Ed.2d 18 (1976)). Similarly, in Alva, the court found a due process violation where the government detained a non-citizen with a final order of removal, released on OSUP for over six years, without a pre-deprivation hearing. Alva, 2025 WL 2419262, at *3-5.

See Huang v. Albarran, 818 F. Supp. 3d 1154, 1166 (E.D. Cal. 2026).

Here, for over 9.5 years, from the date the order of supervision issued on February 9, 2017, through his re-detention on March 4, 2026, petitioner was at liberty in the United States and routinely reported to his local ERO office in accordance with the requirements of the OSUP. Respondents do not contest these factual allegations, and do not allege that petitioner violated the conditions of his supervision. (See ECF No. 7.) Petitioner has not engaged in any criminal activity since the two crimes resulting in his 2004 conviction, over 23 years ago. Respondents do not dispute this fact, and do not argue that petitioner is a danger to the community or a flight risk.

(Id.) Petitioner has a real estate license and owns a real estate company with his wife, a United States citizen, and has three adult children who are also United States citizens. (ECF No. 9 at 7.) Petitioner has now been detained for over 7.5 months since March 4, 2026. Petitioner argues that respondents have taken no steps to effect his removal since January 25, 2017, when the immigration judge ordered petitioner's removal. (ECF No. 1-2 at 6.) Respondents have failed to show that there is a significant likelihood that petitioner will be removed in the reasonably foreseeable future. (See ECF No. 7.) Petitioner's continued detention is therefore not justified, and he is entitled to relief on his habeas petition.

It is uncontested that on February 9, 2017, an Order of Supervision was imposed. (ECF No. 1-2 at 5; see ECF No. 7.) Therefore, petitioner's status before he was re-detained in March 2026 was one of release under OSUP, and petitioner should be ordered released immediately, subject to his OSUP, to return him to the status quo before the pending controversy, his re-detention. See Hoac, 2025 WL 1993771, at *7 (holding petitioner's "immediate release is required to return him to the status quo" before petitioner's re-detention under 8 U.S.C. § 1231); Yang v. Kaiser, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy.").

### D. Petitioner's Other Claims for Relief

Because the Court recommends granting the petition based on the procedural due process claim (first claim), the Court need not address any additional claims raised in the petition. See N.K. v. Noem, No. 1:26-cv-0292 KES SAB, 2026 WL 130345, at *1 (E.D. Cal. Jan. 16, 2026) (granting habeas petition as to the second count of the petition and not addressing other counts because the petitioner was entitled to the relief sought based on the court's ruling as to that second count); Constantinovici v. Bondi, No. 3:25-cv-2405 RBM AHG, 2025 WL 2898985, at *7 (S.D. Cal. Oct. 10, 2025) (granting habeas petition based on due process claim and "declin[ing] to address the remaining grounds in the Petition for seeking release"). Petitioner is entitled to the habeas relief he seeks based on the court's ruling on his procedural due process claim (claim one).

## V. CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The petition for writ of habeas corpus (ECF No. 1) be GRANTED.
2. Petitioner Jose Luis Isaza (A-079-188-150) be immediately released from ICE custody under the same supervisory conditions he was subject to before his March 4, 2026 re-detention, his February 9, 2017 Order of Supervision. If respondents have custody of petitioner's documents (e.g., identification, passport, work permit, Social Security card, etc.), respondents shall return those to petitioner at the time of release. Respondents be enjoined and restrained from re-detaining petitioner absent compliance with constitutional protections, which include, at a minimum, compliance with the requirements for revocation of release, and any other applicable statutory and regulatory procedures.
3. The Clerk of the Court be directed to enter judgment in favor of petitioner and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** of the date of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within **seven days** after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 27, 2026

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

/1/isaz7002.157.2241.imm.RELEASE